Harry H. Weil v. Commissioner.
Harry H. Weil v. Commissioner
Docket No. 3020.
United States Tax Court
1945 Tax Ct. Memo LEXIS 305; 4 T.C.M. (CCH) 195; T.C.M. (RIA) 45055; February 8, 1945
Harry Schneider, Esq., 285 Madison Ave., New York 17, N. Y., for the petitioner. Laurence F. Casey, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax for the year 1940 in the amount of $955.09. Not all of the adjustments are in dispute. The questions presented are: (1) Whether petitioner is taxable upon amounts paid to his father in the taxable year for personal services rendered by the father; and (2) whether petitioner is entitled to a deduction for traveling and entertaining expenses in the amount of $6,031.78. Petitioner filed his return for the taxable year on the cash receipts and disbursements basis with the collector for the third district of New York. Findings of Fact *306 Prior to 1935, the petitioner and his father, Isidor Weil, were officers, directors, and the principal stockholders of Excello Shirt Corporation, a New York corporation, engaged in manufacturing and selling high-grade men's shirts under the trade name "Excello." The corporation was founded in 1906 by Isidor Weil and petitioner became associated with the corporation in 1913. From 1906 to 1935, petitioner and his father had built up a large following of customers. In 1935, the Excello Shirt Corporation and its stockholders entered into an agreement with Phillips-Jones Corporation whereby the Shirt Corporation assigned to Phillips-Jones Corporation the exclusive use of the "Excello" trademark, all patterns and styles used by the shirt corporation in the manufacture and sale of men's shirts, and all customers and good will of the Shirt Corporation. As part of the consideration for the assignment, Phillips-Jones agreed to employ Isidor Weil for a period of one year commencing November 1, 1935 at a salary of $5,000 per annum and to employ petitioner for a period of two years commencing November 1, 1935 at a salary of $7,500 per annum. From November 1, 1935 until May, 1938, petitioner *307 and his father were employed by Phillips-Jones Corporation and received compensation from that corporation for their services. Prior to May 7, 1938, petitioner had been negotiating with Phillips-Jones Corporation in an effort to procure an assignment of the "Excello" trademark. F. Jacobson & Sons, Inc., a New York corporation, had orally agreed with petitioner that if he were successful in procuring the assignment, F. Jacobson & Sons, Inc., would organize a corporation to which the trademark would be assigned. It was also agreed that the new corporation would employ petitioner and his father at a combined annual salary of $12,000 of which petitioner would receive $8,000 and his father $4,000. On May 7, 1938 this agreement was reduced to writing and contained the following provision: "The new corporation so to be formed as aforesaid shall enter into a contract of employment with yourself and your father Isadore (Isidor) Weil, which contract of employment shall be for the one (1) year period commencing June 1st, 1938, at a total annual salary of Twelve Thousand ($12,000) Dollars for both yourself and your father. Said contract shall provide that you are to devote all of your time *308 and attention to the requirements of the business of the new corporation and shall contain such other terms and conditions as the attorney for the corporation shall deem advisable in order to adequately safeguard the interests of the corporation." Prior to signing the agreement, however, petitioner, in pen and ink, crossed out the phrase "and your father Isadore (Isidor) Weil" which appears in the second line of the provision hereinabove set forth. The agreement as signed provided that a total annual salary of $12,000 would be paid for the services of both petitioner and his father. Petitioner believed that it would be to his advantage to have the total annual salary paid to him alone since his father was of an advanced age and might suddenly pass away. Petitioner thought that in that event, it would be easier to induce the Corporation to continue the total payment than to secure an increase of his $8,000 salary. Thereafter, petitioner obtained an assignment of the trademark from the Phillips-Jones Corporation for the sum of $5,000. which amount was supplied by F. Jacobson & Sons, Inc. Pursuant to the agreement of May 7, 1938, F. Jacobson & Sons, Inc., caused a New York corporation *309 to be organized under the name "Excello Shirts, Inc.," and petitioner entered into the employ of that corporation to supervise all operations and to be in charge of sales. He then made an oral agreement with his father under which he agreed to pay his father $4,000 a year as compensation for services to be rendered by the father in behalf of Excello Shirts, Inc. During 1939, petitioner paid his father $4,000 and during the taxable year, he paid him $3,600. This was the only compensation received by Isidor Weil in the taxable year. Although no formal or written extension of the agreement of May 7, 1938 was entered into by petitioner and F. Jacobson & Sons, Inc., the parties considered that the agreement was orally extended from year to year and was in effect throughout the taxable year. During the taxable year, Isidor Weil was 76 years of age. For the first ten months of the year, he spent each day at the offices of Excello Shirts, Inc., New York City, where he sold merchandise to the trade and assisted in the buying and styling of piece goods used in the manufacture of shirts. The services which he rendered in the taxable year in behalf of Excello Shirts, Inc., were substantially *310 similiar to those which he had rendered in 1938 to the Phillips-Jones Corporation. In November or December, 1940, he went to Los Angeles, California and spent part of his time there in calling on the California customers of Excello Shirts, Inc. He died in April, 1944. The fair and reasonable value of the services rendered by Isidor Weil in the taxable year was $3,600. This amount was reported by him in his Federal income tax return for 1940. Neither he nor petitioner owned any stock in either F. Jacobson & Sons, Inc., or in Excello Shirts, Inc.
Petitioner was legally obligated under the agreement of May 7, 1938 to furnish the services of Isidor Weil to Excello Shirts, Inc. The payment of $3,600 to Isidor Weil in the taxable year was made by Excello Shirts, Inc. for personal services rendered to it by Isidor Weil, and petitioner was merely the conduit through whom such payment was made. In connection with his employment by Excello Shirts, Inc., petitioner was required to travel to various cities in the United States in order to sell the products manufactured by Excello Shirts, Inc. During the taxable year, he spent approximately twenty weeks in traveling for his employer outside *311 the New York area and expended various amounts for railroad and airplane fares, meals, lodging, and other incidental expenses. He received the sum of $3,896.78 from Excello Shirts, Inc. during the taxable year for these expenses. Petitioner did not include this amount as income in his return for the taxable year but offset it against claimed traveling and entertaining expenses in the amount of $6,031.78, leaving an amount of $2,135 which he claimed as a deduction. In the notice of deficiency, respondent adjusted petitioner's return by adding to net income the amount of $3,896.78 received by Excello Shirts, Inc., and disallowing $1,119.87 of the traveling and other expenses claimed. Respondent disallowed the above sum for the reason that it had not been "substantiated." The ordinary and necessary expenses paid by petitioner during the taxable year for traveling and entertaining in connection with his business was $3,896.78. Opinion The first issue presents the broad question as to whether petitioner is taxable upon the sum of $3,600 paid by him to his father, Isidor Weil, for personal services rendered by the father in behalf of Excello Shirts, Inc. Although this amount was reported *312 as taxable income by the father in his return for the taxable year, respondent contends that it was merely a gift from petitioner to his father and that the payment of $12,000 by Excello Shirts, Inc., to petitioner was compensation solely for petitioner's services. Petitioner contends that the contract of May 7, 1938 imposed a legal obligation upon him to make his father's services available to the corporation, and that since such services were valuable, his father was entitled to be paid the fair and reasonable value of those services. We think his contention is valid and must be sustained. The evidence adduced at the hearing clearly established the fact that Isidor Weil, although of advanced years, did render valuable services to Excello Shirts, Inc., during the taxable year. An officer of F. Jacobson & Sons, Inc., testified that he saw Isidor Weil in the shirt company's offices daily, and that his activities consisted of selling to customers, talking to the trade, selecting patterns, and designing new lines for the next season's production. The same officer also testified that he was familiar with salaries paid to persons employed in the shirt business and that the sum of $3,600 *313 was fair and reasonable compensation for the services rendered by petitioner's father during the taxable year. As a matter of fact, those services were substantially the same as the services rendered by Isidor Weil to the Phillips-Jones Corporation from 1935 to 1938, for which Isidor Weil was paid an annual salary of $5,000. The question presented under this first issue is a question of fact. The contract of May 7, 1938, quoted in part in the findings of fact, is somewhat unusual. Also, it is not precisely clear. Petitioner struck out from the text the words "and your father Isidor Weil" but he did not strike out of the text the words "for both yourself and your father" after the words and figures $12,000. It can be implied, reasonably, that the agreement contemplated that Isidor Weil would perform services for the corporation, and the subsequent conduct of Isidor Weil and petitioner supports such construction of the agreement. Or, another view, equally logical, is that Isidor Weil could perform services for the corporation, and, if he did, his compensation was to be paid out of the total sum of $12,000 per annum. The original conversations of the parties, prior to the execution *314 of the written agreement, expressed an intent that petitioner's annual salary would be $8,000 and his father's annual salary would be $4,000. When we take into consideration the evidence relating to the services rendered by Isidor Weil in the taxable year and before, and the opinion testimony as to the reasonable value of his services, and the general understanding prior to the execution of the written agreement, it is reasonable to conclude that the $12,000 paid to petitioner directly by the corporation in 1940 was not in payment for petitioner's services alone. Petitioner undertook to receive the total sum annually, under the agreement, as the total salary for both himself and his father. It is not necessary to delve into the area of the concept of an independent contractor, for the purposes of deciding the question. The fact is that Isidor Weil earned compensation by giving his services. They were valuable; we do not have any reason to doubt that from the evidence. Isidor Weil gave his services to the corporation and not to petitioner. Petitioner was the conduit through which Isidor Weil received the compensation. The parties were willing to leave the matter to petitioner and his *315 father of how much Isidor Weil should receive for his services. The principle is well established that income is taxable to the person who earns it. The question here narrows itself to what part of the total sum of $12,000 was earned by petitioner. Petitioner introduced evidence to show that his father performed services of a value of $3,600. By process of deduction, it follows that $3,600 out of the $12,000 was earned by a person other than petitioner, and it would violate the above stated rule to tax such earnings to petitioner. It would have rounded out the evidence if petitioner had introduced evidence to show the value of his own services. Indeed, it would have been preferable if petitioner had done so. However that may be, respondent has determined that petitioner is taxable upon the precise amount of $3,600. Petitioner has overcome the prima facie correctness of that determination. It is held, therefore, that petitioner is not liable for tax on $3,600 which passed through him to Isidor Weil. Respondent's determination on this issue is reversed. The second issue relates to claimed expenses for travel and entertainment in connection with petitioner's business requirements. *316 This, too, is a fact question. Of course, the expenditures must be ordinary and necessary, and they must be business expenses. Petitioner has the burden of proving that the expenses were ordinary and necessary business expenses, and he must prove as exactly as he reasonably can the amouts actually expended. Section 23(a) of the Internal Revenue Code, Regulations 103, Sections 19.23(a)-1 and 2. Petitioner did not include in his gross income the amount of $3,896.78 received from the corporation to reimburse him for his expenses, but applied that amount against alleged expenditures of $6,031.78, and claimed a deduction of $2,135. In the notice of deficiency, respondent included the $3,896.78 in petitioner's gross income and disallowed $1,119.87 of the claimed deduction of $2,135. Accordingly, respondent has increased petitioner's income by $3,896.78 and he has allowed deduction for business expenses in the amount of only $1,015.13. At heretofore pointed out, the burden of proving expenditures of $6,031.78 as ordinary and necessary business expenses is upon petitioner. In order to overcome the presumptive correctness of respondent's determination, he must substantiate *317 those expenditures with a reasonable degree of accuracy. The evidence submitted by him at the hearing falls far short of such substantiation. In the main, it consisted primarily of "estimates" of expenditures incurred. Petitioner estimated that he spent $1,000 for railroad fares, $1,498.31 for hotel bills, $1,008 for meals, $250 for excess baggage expenditures, $1,440 for entertainment of buyers, $252 for tips, $336 for incidental expenses such as stamps, telegrams, stenographer's services, barber shops and cigars, $250 for Christmas presents, and $565 for other expenses. The only documentary evidence in support of such expenditures, other than a few railway and airplane stubs, was hotel receipts showing payment of bills in the amount of $1,198.31. Included in most of these hotel bills, however, are large amounts paid for restaurant and bar expenditures. For example, on February 21, 1940, the bill of the Netherland Plaza Hotel in Cincinnati showed a restaurant and bar expenditure of $177.75. Other hotel receipts showed expenditures for restaurant and bar in substantial amounts. We think many of the expenditures on the hotel bills were for purposes personal to the petitioner and were *318 not ordinary and necessary business expenses. Petitioner has not proved what items were business expenses and what were personal expenses. We cannot make the classification from the evidence before us, except upon the basis of what the employer considered as business expenses subject to reimbursement. We think it clear that much spent falls in the class of personal expense. Under this issue there is a large degree of failure of proof. Petitioner also claimed that he spent six dollars a day for meals or a total amount of $1,008 on his business trips. In view of the large restaurant expenditures on the hotel bills, however, there is evidently an overlapping of these claimed expenditures for meals. With respect to the other expenditures claimed, petitioner had no records or documentary evidence which would substantiate them. Although we are unable, from the record to determine in detail the exact amount spent by petitioner as ordinary and necessary business expenses, it is necessary to approximate that amount as closely as possible under all the facts. Cohan v. Commissioner, 39 Fed. (2d) 540. Petitioner did travel to various cities in the United States on business during *319 the taxable year and he did incur business expenses. We think the approximate amount of those expenses was the amount which was reimbursed to petitioner by his employer; to wit, the sum of $3,896.78, and it is held that petitioner is entitled to a business expense deduction in that amount. In reaching this conclusion we have carefully considered all of petitioner's testimony and all the other evidence submitted by him at the hearing. There is no error per se in respondent's having included in income the sum of $3,896.78. Under section 19.23(a)-2(b) of Regulations 103, petitioner should have included this amount in income, and deducted his actual expenses. All of the matter should be adjusted so as to allow petitioner a deduction in the amount which has been held to constitute his business expenses for the year if the above amount is included in income. Following respondent's method, there should be eliminated from taxable income the sum of $1,119.87 and the deduction of $2,135, claimed on the return should be allowed, plus $1,761.78, making a total deduction of $3,896.78. In any event, under our holding, the inclusion in income of $3,896.78 and the deduction of that amount for business *320 expenses will have a neutral result in the required recomputation of the deficiency. Decision will be entered under Rule 50.